**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., BAILING OUT BENJI, FOOD & WATER WATCH, and IOWA CITIZENS FOR COMMUNITY IMPROVEMENT, <br><br> Plaintiffs, <br><br> vs. <br><br> KIMBERLEY K. REYNOLDS, in her official capacity as Governor of Iowa, TOM MILLER, in his official capacity as Attorney General of Iowa, VANESSA STRAZDAS, in her official capacity as Cass County Attorney, CHUCK SINNARD, in his official capacity as Dallas County Attorney, and JOHN GISH, in his official capacity as Washington County Attorney, <br><br> Defendants. | No. 21-cv-00231-SMR-HCA <br><br><br> **DEFENDANTS' RESISTANCE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants Kimberley Reynolds, Tom Miller, Vanessa Strazdas, Chuck Sinnard, and John Gish (hereafter collectively referred to as "Defendants"), pursuant to Local Rule 56(b), hereby submit the following Resistance to Plaintiffs' Motion for Summary Judgment:

**TABLE OF CONTENTS**

I.  **INTRODUCTION**......................................................................................................3

II.  **ARGUMENT**............................................................................................................3

    A. **GENUINE DISPUTES OF MATERIAL FACTS CONCERNING PLAINTIFFS' STANDING PRECLUDE GRANTING SUMMARY JUDGMENT, BUT EVEN IF THE COURT DISAGREES, PLAINTIFFS' FAILED TO ESTABLISH STANDING**....................................4

        1. Legal Standard ...................................................................................................4

2. Disputes of Material Facts Concerning Plaintiffs'
   Standing Preclude Summary Judgment and Discovery
   Of those Matters is Warranted ...........................................................................5

3. Plaintiffs' Alleged Injuries are too Speculative and
   Hypothetical, and the Alleged Injuries doe no Occur to
   A Legally Recognized Interest...........................................................................8

   a. **Plaintiffs Animal Legal Defense Fund, People for Ethical
      Treatment of Animals, Inc., and Bailing Out Benji**................................8

   b. **Plaintiff Food and Water Watch** ...........................................................11

   c. **Plaintiff Iowa Citizens for Community Improvement** .........................12

4. Plaintiffs have Not Plead Sufficient Facts to Satisfy
   The Redressability Element of Standing...........................................................13

**B. IOWA'S TRESPASS SURVEILLANCE STATUTE DOES NOT
REGULATE CONDUCT PROTECTED BY THE FIRST
AMENDMENT** ..................................................................................................15

**C. IOWA'S TRESPASS SURVEILLANCE STATUTE IS NOT
UNCONSTITUTIONAL ON ITS FACE**...........................................................17

**D. IOWA'S TRESSPASS SURVEILLANCE STATUTE IS NARROWLY
TAILORED TO SIGNIFICANT GOVERNMENTAL INTERESTS** ...........19

1. Iowa's Trespass Surveillance Statute Advances Substantial
   Governmental Interest....................................................................................19

2. Iowa's Trespass Surveillance Statute is Narrowly Tailored
   to the Substantial Governmental Interests .......................................................20

**E. IOWA'S TRESPASS SURVEILLANCE STATUTE IS NOT
OVERBROAD IN VIOLATION OF THE FIRST AMENDMENT**...............22

1. Iowa's Trespass Surveillance Statute does not Prohibit Protected
   Speech Necessitating First Amendment Protection.........................................23

2. Even if the Trespass-Surveillance Statute Criminalizes Some
   Protected, Expressive Conduct, the Statute does not Proscribe a
   Substantial Amount of Protected Speech in Relation to its
   Plainly Legitimate Sweep ...............................................................................23

**F.  PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION IN THE ALTERNATIVE** ......................................................27

**III.  CONCLUSION** .......................................................................................27

**CERTIFICATE OF SERVICE** ..........................................................................28

## I.  <u>INTRODUCTION</u>

In 2021, the Iowa Legislature passed, and the Governor signed, H.F. 775 ("Trespass Surveillance statute"), which, in part, prohibits a person from knowingly placing or using a camera or electronic surveillance device on property to record data or images while committing a trespass.[1] Iowa Code § 727.8A.  The first violation of the Trespass Surveillance statute is an aggravated misdemeanor, and any subsequent violation(s) is a Class D felony.  *Id.*

Plaintiffs are various organizations who allege they are affected by enactment and threatened enforcement of the Trespass Surveillance statute.  Plaintiffs' Motion for Summary Judgment ("Motion") (Dkt. 23) asserts the statute is facially unconstitutional and overbroad under the First Amendment.  Plaintiffs' Motion should be denied for the reasons set forth herein.

## II.  <u>ARGUMENT</u>

Plaintiffs' Motion should be denied because there are genuine disputes of material facts concerning Plaintiffs' standing that prevent granting summary judgment, but even if the Court determines the material facts are not in dispute, the Motion should still be denied because Plaintiffs have failed to establish standing.[2]  Plaintiffs have not demonstrated the Trespass

---

[1]  H.F. 775 contained a separate provision, which Plaintiffs are not challenging (*see* Plaintiffs' Civil Rights Complaint ("Complaint") (Dk. 1), ¶ 1 n.1), that prohibits a person from taking unauthorized samples from agricultural property, animals, or crops, codified at Iowa Code section 716.7A.

[2]  Defendants agree with Plaintiffs' description of the proper legal standard applicable to summary judgment.

Surveillance statute invades their legally protected interests or the alleged harm Plaintiffs will suffer is "qualitatively and temporally concrete," as well as "distinct and palpable, as opposed to merely abstract." Even if the Plaintiffs have demonstrated the statute invades their legally protected interests, they have not demonstrated the relief requested by the Court will redress the alleged injuries.

Assuming *arguendo* that Plaintiffs have standing, Plaintiffs' Motion should be denied because the Trespass Surveillance statute regulates conduct, not speech, but even if the statute regulates speech, it is not facially unconstitutional under the First Amendment because Plaintiffs cannot demonstrate there are no set of circumstances under which the law would be valid or that the statute lacks any plainly legitimate sweep. The statute is content-neutral and is narrowly tailored to significant governmental interests. Finally, the statute is not overbroad in violation of the First Amendment because it does not proscribe conduct protected by the First Amendment, and even if it did, any potential overbreadth is not substantial in relation to its plainly legitimate sweep. Accordingly, Defendants urge this Court to deny Plaintiffs' Motion.

### A. GENUINE DISPUTES OF MATERIAL FACTS CONCERNING PLAINTIFFS' STANDING PRECLUDE GRANTING SUMMARY JUDGMENT, BUT EVEN IF THE COURT DISAGREES, PLAINTIFFS FAILED TO ESTABLISH STANDING.

1. Legal Standard.

Standing functions as a "'threshold question' a litigant invoking federal jurisdiction must satisfy before the court may hear the case." *Jackson v. Abendroth & Russell, P.C.*, 207 F.Supp.3d 945, 950 (S.D. Iowa 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To establish standing, a plaintiff must at a minimum show "(1) an 'injury-in-fact' that (2) is 'fairly … trace[able] to the challenged action of the defendant' and (3) is 'likely … [to] be redressed by a favorable decision' in court." *Id*. at 950-51 (citing *ABF Freight Sys., Inc. v Int'l Bhd. of*

*Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992))).  The injury-in-fact element requires a plaintiff to establish "'an invasion of a legally protected interest' that is both 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'"  *Id*. at 951 (citing *Lujan*, 504 U.S. at 560).

Where a plaintiff has asserted First Amendment claims, the injury-in-fact element can be satisfied as long as the plaintiff "is objectively reasonably chilled from exercising his First Amendment right to free expression in order to avoid enforcement consequences." *Republican Party of Minn., Third Congressional Dists. v. Klobouchar*, 381 F.3d 785, 792 (8th Cir. 2004).  A plaintiff establishes an injury in fact "where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Dreihaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  Although the standing requirements are less rigorous in cases concerning First Amendment claims, a threatened injury must still be "qualitatively and temporally concrete, as well as 'distinct and palpable, as opposed to merely abstract.'"  *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Notwithstanding the lower bar for the standing injury-in-fact element in First Amendment cases, Plaintiffs must also still satisfy the remaining *Lujan* elements—causation and redressability—for their facial and overbreadth challenges.  *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799-802 (8th Cir. 2006).

        2.      <u>Disputes of Material Facts Concerning Plaintiffs' Standing Preclude Summary Judgment and Discovery of those Matters is Warranted.</u>

Defendants' have previously argued in their Motion to Dismiss that Plaintiffs lacked standing to challenge the statute because their injuries were too speculative and hypothetical since Plaintiffs did not provide any details about how their investigations could be considered trespass under Iowa Code section 716.7(2)(a), and the commission of a trespass under section 716.7(2)(a) is required in order for Iowa's Trespass Surveillance statute to apply.   (Dkt. 19, pp. 7-10). Defendants' Motion also argued certain Plaintiffs lacked standing because they could not satisfy the redressability element.  (Dkt. 19, pp. 10-11).  The Motion identified that Plaintiffs only violate the Trespass Surveillance statute if they engage in trespass first, which is separate and independent criminal statute, and those Plaintiffs had not plead facts demonstrating that, even in the absence of the Trespass Surveillance statute, Plaintiffs would still engage in conduct that violates Iowa's general criminal trespass law.  *Id.*

Plaintiffs' Motion for Summary Judgment attempts to cure the standing deficiencies Defendants identified in the Motion to Dismiss.  Plaintiffs' Motion relies on facts and statements from Plaintiffs' members, providing explanations on how or why their investigations or conduct would constitute trespass under Iowa's general criminal trespass statute, as well as statements that Plaintiffs would risk engaging in conduct that violates Iowa's general criminal trespass law in the absence of the Trespass Surveillance statute.  (Dkt. 23-2, ¶¶ 15, 18-20, 25-26, 29, 31, 36, 39, 44, and 45).  Plaintiffs have essentially identified that because of the enhanced penalties (1st offense aggravated misdemeanor) for violations of the Trespass Surveillance statute compared with the penalties for violation of Iowa's general criminal trespass law (1st offense simple misdemeanor), they have ceased conducting their investigations or civil-disobedience, but that if the Trespass Surveillance statute were enjoined, Plaintiffs would conduct their investigations or civil

disobedience because they either do not believe their conduct constitutes trespass or they are willing to accept the lesser penalties.  (Dkt. 23-1, pp. 7, 9).

If Plaintiffs truly do not believe their conduct constitutes trespass under Iowa's general criminal trespass statute, the claims about their purported fear of prosecution under the Trespass Surveillance statute, but not the general criminal trespass statute, creates a dispute of material fact that precludes summary judgment and warrants discovery to probe the veracity of such claims. Similarly, Plaintiffs' purported fear of prosecution under the Trespass Surveillance statute but not other statutes that may also prohibit Plaintiffs' conduct and also include enhanced penalties compared to the general criminal trespass statute, including, but not limited to, Iowa Code sections 716.7A, 717A.3A(1)(a), and 717A.3B, creates a dispute of material fact that precludes summary judgment and warrants discovery.

Plaintiffs also made a number of claims in support of their Motion concerning the planning, execution, and tactics of various types of past and potential future activity, including acts of non-violent civil disobedience and undercover investigations, that create disputes of material facts, discovery of which is warranted.  Plaintiff Iowa Citizens for Community Improvement ("ICCI") makes claims about the prevalence of arrests and associated recording activity its members engage in, as well as instructions given to them about what they should and should not record, and the impact the Trespass Surveillance statute has allegedly had on ICCI's future plans for civil disobedience involving trespass.  (Dkt. 23-2, ¶¶ 4-5, 7, 10-12).  Plaintiffs Animal Legal Defense Fund ("ALDF"), People for the Ethical Treatment of Animals, Inc. ("PETA"), and Bailing Out Benji ("BOB"), all make claims about instructions given to their investigators about where they should and should not conduct any recordings during their investigations and the impact the Trespass Surveillance statute has allegedly had on their future plans for undercover investigations.

*Id*. at ¶¶ 19, 23, 33, 39, and 42.  Finally, Plaintiff Food and Water Watch ("FWW") makes claims

about its efforts to work and coordinate with ICCI against "factory farming" and promoting ICCI's

non-violent civil disobedience involving trespass.  *Id*. at ¶ 53.

All of these claims relate to Plaintiffs' standing and whether their alleged injuries are too

speculative or hypothetical, or even occur to a legally recognized interest as well as Plaintiffs'

overbreadth claim and whether their activity is protected by the First Amendment and the scope

of the Trespass Surveillance statute's application to any protected speech compared to its plainly

legitimate sweep.  Until discovery related to said claims occurs, Defendants cannot admit to

Plaintiffs' claims.  As a result, disputes of material facts exist precluding summary judgment at

this time.  Plaintiffs' Motion for Summary Judgment should therefore be denied and discovery

should be allowed to proceed.

3.  <u>Plaintiffs' Alleged Injuries are too Speculative and Hypothetical, and the
    Alleged Injuries do not Occur to a Legally Recognized Interest.</u>

**a.  Plaintiffs Animal Legal Defense Fund, People for the Ethical
    Treatment of Animals, Inc., and Bailing Out Benji.**

In the event the Court concludes there are no genuine disputes of material facts that

preclude summary judgment, Plaintiffs have still failed to establish standing based on the

undisputed facts in the record.  Plaintiffs ALDF, PETA and BOB have not satisfied the injury

element for standing.  Despite these Plaintiffs' claims of suffering a chill of their First

Amendment rights, they expressly state they do not believe their investigators engage in criminal

trespass under Iowa Code section 716.7(2)(a), which is a prerequisite to committing a violation

of Iowa's Trespass Surveillance statute.  (Dkt. 23-1, at 8 ("ALDF, PETA, and BOB do not

believe that in producing their political speech they are engaging in trespass.") and 9 ("ALDF,

PETA and BOB explain that if § 727.8A were struck down they would not be deterred by the

penalties under Iowa's generic trespass law because they do not believe they trespass…")). Notwithstanding Plaintiffs' belief their investigators do not engage in trespass, Plaintiffs claim they are still chilled from conducting their investigations because: 1) Defendants have allegedly stated "if any of the facilities ALDF, PETA, or BOB enter have a 'no photography sign posted,' it is arguable their recording would amount to trespass"; and 2) the State has allegedly "repeatedly labeled ALDF, PETA and BOB's investigators trespassers."  (Dkt. 23-1, at 8).

Plaintiffs' first rationale ignores their own statements and mischaracterizes Defendants' argument.  It was Plaintiffs—not Defendants—who asserted whistleblowers would be in violation of Iowa's general trespass law, stating that "Iowa Code § 727.8A could also be used to punish…workers who use a phone or camera to gather proof of unsafe conditions or managers' derogatory comments, *id*. § 716.7(2)(a)(4) (making using an object at business without permission a trespass.)."  (Dkt. 1, at 5 ¶ 20).  Rather than accept Plaintiffs' arguably erroneous interpretation, Defendants offered an alternative interpretation of Iowa's general trespass statute that the law would arguably not apply to a whistleblower who is using a camera to document unsafe conditions, even if the employer had a "no photography" sign posted.  (Dkt. 19, at 31).

Moreover, as Defendants have previously stated, if a worker using a phone or camera without permission is considered a trespass, then Iowa's Trespass Surveillance statute would only be enhancing the penalty for conduct that is already illegal, and therefore, Plaintiffs ALDF, PETA and BOB would not suffer an injury to a legally cognizable interest.  *See* Wright & Miller, 13A Federal Practice and Procedure § 3531.4 (3d ed.) ("The injured interest must be one that the courts will recognize for standing purposes."); s*ee also Citizen Center v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014) ("For example, a plaintiff lacks standing to complain about his inability to commit crimes because no one has a right to commit a crime.").

Plaintiffs second rationale also does not suffice to demonstrate their chill is objectively reasonable.  First, Plaintiffs erroneously assert the State has "repeatedly" labeled "ALDF, PETA and BOB's investigators trespassers."  Several of the statements Plaintiffs rely upon to support this claim in their Statement of Undisputed Material Facts are inaccurate or mischaracterize the State's words.  (*See* Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts, Dkt. 32-2, ¶¶ 47, 49).

Second, although Plaintiffs correctly point out that the State has identified Plaintiffs' undercover investigations as trespass (Dkt. 23-1, ¶ 48) on one occasion, it was in the context of the Ag-Fraud litigation, challenging Iowa Code section 717A.3A, which expressly prohibits accessing agricultural production facilities by false pretenses.  The Eighth Circuit has now concluded that using false pretenses to obtain access to those facilities results in a legally cognizable harm—trespass—and, therefore, the access provision of the Ag-Fraud statute (section 717A.3A(1)(a) did not regulate speech protected by the First Amendment.  *See ALDF et al. v. Reynolds et al.* (*Reynolds*), 8 F.4th 781, 785-86 (8th Cir. 2021).  Iowa's Trespass Surveillance statute only applies where the person commits an underlying trespass as defined by Iowa's general criminal trespass statute—Iowa Code section 716.7—not a violation of the access provision in Iowa's Ag-Fraud statute.  However, consistent with *Reynolds*, if the use of intentionally false speech to obtain consent to access property is deemed a trespass under Iowa Code section 716.7 because such speech invalidates consent, then, as previously discussed, Iowa's Trespass Surveillance statute would only be enhancing the penalty for conduct that is already illegal, and therefore, Plaintiffs ALDF, PETA and BOB would not suffer an injury to a legally cognizable interest.  *See* Wright & Miller, § 3531.4; s*ee also Gessler*, 770 F.3d at 910.

Plaintiffs ALDF, PETA, and BOB have not provided any additional facts or details

beyond what has been previously discussed to explain how or why their investigators' methods of obtaining employment or access could be considered a trespass under Iowa Code section 716.7(2)(a).  Plaintiffs ALDF, PETA, and BOB have provided no examples of past prosecution for trespass by the State of Iowa or any Iowa Counties for undercover investigators that have obtained access or employment in a manner consistent with these Plaintiffs' methods in order to conduct an investigation.

These Plaintiffs' claims are too remote and speculative for purposes of the imminence requirement for standing, or, in the alternative, the claimed injury does not occur to a legally recognized interest.  Accordingly, Plaintiffs ALDF, PETA and BOB lack standing and summary judgment should be denied.

### b.  Plaintiff Food and Water Watch

Plaintiff FWW has not satisfied the injury element for standing.  Plaintiff FWW stated that it relies upon the recordings of Plaintiffs ALDF and PETA and alleges its inability to receive those recordings violates its First Amendment rights.  (Dkt. 23-1, at 10-11).  Similar to ALDF, PETA and BOB, FWW did not provide any additional specifics or details beyond what has been previously discussed to explain how or why the investigators' methods of obtaining employment or access could be considered a trespass under Iowa Code section 716.7(2)(a).  Plaintiff FWW provided no examples of past prosecution for trespass by the State of Iowa or any Iowa Counties for undercover investigators that have obtained access or employment in a manner consistent with the Plaintiffs' methods in order to conduct an investigation.  Plaintiff FWW's fear of undercover investigations being labeled a trespass under Iowa Code section 716.7(2)(a) is based solely upon a subjective chill.

However, similar to the Plaintiffs ALDF, PETA and BOB, consistent with *Reynolds*, if

the use of intentionally false speech to obtain consent to access property is deemed a trespass under Iowa Code section 716.7 because such speech invalidates consent, then, as previously discussed, Iowa's Trespass Surveillance statute would only be enhancing the penalty for conduct that is already illegal, and Plaintiffs ALDF, PETA and BOB would not suffer an injury to a legally cognizable interest.  *See* Wright & Miller, § 3531.4; s*ee also Gessler*, 770 F.3d at 910. Consequently, if Plaintiffs ALDF, PETA and BOB do not have standing because the injury does not occur to a legally cognizable interest, then Plaintiff FWW's inability to obtain information from their illegal trespasses also does not create standing because there is no right to obtain information through illegal means.  *See Bartnicki v. Vopper*, 532 U.S. 514, 532 n.19 (2001) (stating the First Amendment does not confer a license on news reporters or their sources to violate valid criminal laws, even if the violation could result in the discovery of newsworthy information).  Accordingly, Plaintiff FWW lacks standing and summary judgment should be denied.

### c.  Plaintiff Iowa Citizens for Community Improvement

Plaintiff ICCI has not satisfied the injury element for standing.  Plaintiff ICCI asserts injury because it wants to engage in non-violent civil disobedience again, including trespass, and would record images and sounds of these activities, but is declining to do so as a result of Iowa's Trespass Surveillance statute.  (Dkt. 23-1, at 6-7).  While Plaintiff ICCI may have suffered an injury by not being able to engage in trespass and record said trespass under Iowa's Trespass Surveillance statute, a plaintiff must suffer an injury to a legally recognized interest.  *See* Wright & Miller, § 3531.4; s*ee also Gessler*, 770 F.3d at 910.

Plaintiff ICCI's allegation of injury that the State has made it more difficult for ICCI to commit a crime—trespass—is not a legally recognized interest capable of being injured.  *See*

*East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 764 (9th Cir. 2018) (stating asylum seekers challenging a restriction on asylum would not have standing to assert a right to cross the border illegally, to seek asylum or otherwise, because said right is not a legally cognizable interest); *Gessler*, 770 F.3d at 910 ("For example, a plaintiff lacks standing to complain about his inability to commit crimes because no one has a right to commit a crime.").  Notwithstanding Plaintiff ICCI's assertion that it wishes to engage in allegedly protected speech (recording), ICCI is really asserting it wishes to commit a crime and record that crime, which is not a legally cognizable interest capable of being injured.  Accordingly, Plaintiff ICCI lacks standing and summary judgment should be dismissed.

4.    Plaintiffs have Not Plead Sufficient Facts to Satisfy the Redressability Element of Standing.

Redressability is established by more than a "merely speculative" showing that the court can grant relief to redress a plaintiff's injury.  *Advantage Media*, 456 F.3d at 801 (citing *Planned Parenthood of Mid–Missouri and Eastern Kansas, Inc. v. Ehlmann*, 137 F.3d 573, 577 (8th Cir.1998)).  Here, even if the Court were to find the Trespass Surveillance statute unconstitutional under the First Amendment, it is not clear that an injunction prohibiting the Defendants from enforcing the statute will redress Plaintiffs' injuries.

As previously mentioned, the Trespass Surveillance statute requires that an underlying "trespass" has occurred as defined by Iowa Code section 716.7.  Iowa Code § 727.8A.  As a result, Plaintiffs would only violate the Trespass Surveillance statute if their investigations involve a criminal trespass under Iowa Code section 716.7(2)(a).  Thus, even if the Court enjoins the Trespass Surveillance statute, if Plaintiffs' investigations involve a criminal trespass, then the investigations would still be unlawful under Iowa's general criminal trespass statute.

Plaintiffs ALDF, PETA and BOB have not plead any facts stating that, in the absence of

13

Iowa's Trespass Surveillance statute, they would still engage in their investigations if they involve a criminal trespass under Iowa Code section 716.7(2)(a).  While Plaintiffs ALDF, PETA and BOB have asserted that if Iowa Code § 727.8A were enjoined, they would conduct their undercover investigations and would not be deterred by Iowa's general criminal trespass statute, they <u>did not</u> state they would conduct their investigations in the event they were considered a trespass.  (Dkt. 23-1, at 9).  These plaintiffs merely stated they would not be deterred by the general criminal trespass statute because "they do not believe they trespass."  *Id.*

Although Plaintiff ICCI has stated it would engage in trespass in the absence of Iowa Code § 727.8A, and, therefore, ICCI's alleged injuries would be redressed by a Court order in their favor, the existence of separate and independent statutes that prohibit the same conduct precludes a finding of redressability for Plaintiff ICCI, or Plaintiffs ALDF, PETA and BOB to the extent their investigations constitute trespass under Iowa Code section 716.7.  *See Advantage Media*, 456 F.3d at 801-02 (holding that plaintiff failed to satisfy redressability requirement when challenging sign ordinances because plaintiff's proposed sign would still be unlawful under separate ordinances); *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois*, 9 F.3d 1290, 1292 (7th Cir. 1993) (no standing to challenge sign code's ban on off-premises signs where proposed sign also violated unchallenged zoning restrictions).

Plaintiffs attempt to avoid their redressability problem by claiming that as long as the challenged statute is a "contributing factor" to their alleged injury, they have satisfied this element of standing. (Dkt. 23-1, at 10).  Plaintiffs reliance on the "contributing factor" argument is misplaced; the "contributing factor" argument relates to injury and causation—not redressability—for purposes of the standing analysis.  *See Nat. Res. Def. Council, Inc., v. U.S. Food and Drug Admn.*, 710 F.3d 71, 85 (2nd Cir. 2013) (court held that the Food and Drug

Administration's (FDA) unreasonable delay in regulating a chemical was a "contributing factor" to employees' injuries, and, consequently, the injuries were "fairly traceable" (causation) to the FDA's actions).

Plaintiffs' injuries will not be redressed by the relief they seek.  Accordingly, Plaintiffs lack standing and summary judgment should be denied.

**B.      IOWA'S TRESPASS SURVEILLANCE STATUTE DOES NOT REGULATE CONDUCT PROTECTED BY THE FIRST AMENDMENT.**

Committing a trespass is not speech; it is conduct.   Using or placing a camera or other electronic surveillance device after committing the trespass does not transform the prohibited trespass and accompanying conduct into protected speech.  First Amendment challenges involve a three-step analysis: 1) whether the speech is protected by the First Amendment; 2) if the speech is protected, the court must determine what standard of review applies; and 3) application of the standard of review to the facts of the case.  *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985).  Plaintiffs bear the burden of satisfying the first factor, and here, they cannot meet that burden.  *See Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 n. 5 (1984).

The First Amendment only protects "conduct that is inherently expressive." *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 547 U.S. 47, 66 (2006).  Conduct does not generate First Amendment protection "merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."  *Id.* at 62 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).  Iowa's Trespass Surveillance statute merely prohibits the act of using or placing a camera or electronic surveillance device while committing a trespass.  Iowa Code § 727.8A.  A "common law trespass 'symbolizes nothing.'" *Animal Legal Defense Fund. v. Wasden*, 878 F.3d 1184, 1207-08 (9th Cir. 2018) (Bea, J.,

15

dissenting); *see also Pickup v. Brown*, 740 F.3d 1208, 1230 (9th Cir. 2014), *abrogated on other grounds by Nat'l Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018) ("[a]n act that 'symbolizes nothing,' even if employing language, is not 'an act of communication' that transforms conduct into First Amendment speech.") (quoting *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 126-27 (2011)).

While the Eighth Circuit has held that the recording, production, editing and subsequent publication of videos is protected speech when considered together, it is less clear that recording alone, particularly when it is associated with a criminal trespass, is protected speech. *See Telescope Media Group v. Lucero*, 936 F.3d 740, 751 (8th Cir. 2019). In *Lucero*, the Court held that the Minnesota Human Rights Act's ("MHRA") requirement that wedding videographers serve same-sex couples seeking wedding video services violated videographers' First Amendment right to free speech. *Id*. At 750-58. The Court determined that the videos the videographers wanted to create were speech but focused on the entire process (recording, editing, production) to qualify the conduct as speech. *Id*. at 751 (the "videos will not just be simple recordings, the product of planting a video camera at the end of the aisle and pressing record. Rather, they intend to shoot, assemble, and edit the videos with the goal of expressing their own views about the sanctity of marriage."). The Court's focus on the editorial judgment and control of the video-creating process, post-recording, demonstrates the act of recording, when considered alone, may be non-expressive conduct rather than protected speech.

While the Court, in *Lucero*, rejected an argument that each step in the video creation process is conduct and not protected speech, its focus was still on the entire process, stating that what matters to the Court's analysis is that all of the activities combine to produce finished videos that are media for the communication of ideas. *Id*. at 752. Here, Iowa's Trespass

16

Surveillance statute does not prohibit, restrict or regulate the editing, publication or distribution of recordings or photographs taken on trespassed property; it only prohibits the use or placing of cameras or other electronic surveillance devices while committing a trespass.  The conduct of pressing start/stop on a camera or recording device, or placing said devices, while committing a trespass has minimal, if any, expressive element and is markedly different than the protected speech—recording and production of a wedding video with the consent of the married couple— the Court recognized in *Lucero*.  Otherwise, using a cell phone to record oneself while speeding down the highway would also be considered expressive conduct protected by the First Amendment.

Because the mere act of using or placing a camera or electronic surveillance device while committing a trespass is not speech or expressive conduct, Iowa's Trespass Surveillance statute does not regulate conduct protected by the First Amendment, and summary judgment should be denied.

### C.   IOWA'S TRESPASS SURVEILLANCE STATUTE IS NOT UNCONSTITUTIONAL ON ITS FACE.

Even assuming Iowa's Trespass Surveillance statute regulates "speech" under the First Amendment, the statute is not facially unconstitutional because it has a myriad of valid applications and a plainly legitimate sweep.  To succeed in a facial challenge to Iowa's Trespass Surveillance statute, Plaintiffs must establish "that no set of circumstances exists under which [§ 727.8A] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987), or that the statute lacks any "plainly legitimate sweep," *Washington v. Glucksberg*, 521 U.S. 702, 740, n. 7 (1997) (Stevens, J., concurring in judgments) (internal quotation marks omitted).  *U.S. v. Stevens*, 559 U.S. 460, 472 (2010).  Facial challenges are disfavored for several reasons: 1) they "often rest on speculation;" 2) they run contrary to the principle of judicial restraint that courts should not

"formulate a rule of constitutional law broader than is required by the precise facts to which is to be applied;" and 3) they may prevent laws "embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008).

Iowa's Trespass Surveillance statute prevents persons from trespassing, including onto private property such as businesses closed to the public and residential dwellings, and then using or placing a camera or electronic surveillance device to record data, information, conduct or communications where a person or property owner has a reasonable expectation of privacy.  A person who trespasses by breaking into someone's home to use or place a camera or electronic surveillance device to photograph or record the person without their consent would violate the statute and the First Amendment would not protect such activity.  Similarly, an undercover investigator seeking to document alleged improprieties at a health clinic that provides reproductive healthcare to women, including abortions, who places a hidden recording device to capture information or conversations outside the presence of the investigator would violate the statute and the First Amendment would not protect such activity.  A competitor who trespasses onto a competing business, closed to the public, in order to use or place a camera or electronic surveillance device in order to capture images or data to obtain trade secrets would violate the statute and the First Amendment would not protect such activity.  These are just a few examples of the myriad of applications of Iowa's Trespass Surveillance statute where the First Amendment clearly would not provide a defense to such conduct.

Plaintiffs cannot demonstrate there are no set of facts in which Iowa's Trespass Surveillance statute can be validly applied or that the statute lacks any plainly legitimate sweep. Accordingly, summary judgment should be denied.

**D.   IOWA'S TRESPASS SURVEILLANCE STATUTE IS NARROWLY TAILORED TO SIGNIFICANT GOVERNMENTAL INTERESTS.**

1.   Iowa's Trespass Surveillance Statute Advances Substantial Governmental Interests.

A content-neutral regulation[3] that has an incidental impact on speech is subject to intermediate scrutiny.  *See Peterson v. City of Florence*, 727 F.3d 839, 843 (8th Cir. 2013) (citing *Turner Broad. Sys. v. F.C.C.*, 512 U.S. 622, 642 (1994)).  The Eighth Circuit has held that to survive intermediate scrutiny, a content-neutral time, place, or manner regulation must be

> narrowly tailored to serve a substantial governmental interest and leaves open ample alternative channels for communicating the speech. *Ward*, 491 U.S. at 791, 109 S.Ct. 2746. An ordinance is narrowly tailored if it "'promotes a substantial interest that would be achieved less effectively absent the regulation' and the means chosen does not 'burden substantially more speech than is necessary to further' the city's content-neutral interest." *Excalibur Grp., Inc. v. City of Minneapolis*, 116 F.3d 1216, 1221 (8th Cir.1997) (quoting *Ward*, 491 U.S. at 799, 109 S.Ct. 2746).

*Peterson*, 727 F.3d at 843.

The protection of both private and public property and the right to privacy from invasion through trespass and subsequent recording are substantial governmental interests.  The protection of property from interference, even by those who seek to engage in speech protected by the First Amendment, has been deemed a substantial governmental interest.  *See Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 374-77 (1997) (Court held that protecting property rights, among other governmental interests, near an abortion clinic from protestors was a significant enough governmental interest to justify an appropriately tailored injunction); *People for the Ethical Treatment of Animals, Inc., v. Stein*, 466 F.Supp.3d 547, 577 (MD N.C. 2020)

---

[3]  Plaintiffs' Motion for Summary Judgment did not argue Iowa's Trespass Surveillance statute was content-based, and assumed, for purposes of the Motion, that the statute was content-neutral and subject to intermediate scrutiny.  (Dkt. 23-1, at 14).

(recognizing that protecting property rights is a significant governmental interest) (citing

*McCullen v. Coakley*, 573 U.S. 464, 486-87 (2014)); *see also Phelps-Roper v. City of*

*Manchester*, 697 F.3d 678, 691-93 (8th Cir. 2012) (Court, noting the Supreme Court's expansion

of the right to privacy as a substantial governmental interest, held the right to privacy of funeral

attendees was a substantial governmental interest).  Related to property rights is the protection of

propriety information or trade secrets, which is also a substantial governmental interest.  *See*

*Wasden*, 878 F.3d at 1200-01 (the Ninth Circuit, applying a "more searching" application of

rational basis review, held the concern about theft of trade secrets or propriety information was a

legitimate governmental interest).

Here, the aforementioned interests are certainly substantial in light of the underlying

requirement that a trespass must have occurred, and the prevention of trespass alone is a

substantial governmental interest.  There have been several instances in the past two years that

involve the trespass and subsequent recording of activity within a business, notwithstanding

existing trespass laws, that demonstrate the concern for the aforementioned interests is very

real.[4,5]

> 2.   Iowa's Trespass Surveillance Statute is Narrowly Tailored to the Substantial Governmental Interests.

---

[4]  In 2019, individuals trespassed onto an Iowa State Senator's farm, broke into a hog confinement building, and recorded animals and conditions therein.  Animal Rights Group Claims Animal Neglect at Farm of Iowa Senator Who Backed Ag Gag Law (Dec. 26, 2020), available at https://www.desmoinesregister.com/story/money/agriculture/2020/01/24/animal-rights-group-claims-neglect-pigs-iowa-farm-ag-gag-supporter/4545787002/.

[5]  Individuals associated with the same group involved in the 2019 trespass, again trespassed onto a farm, broke into a hog confinement building, and recorded animals and conditions therein multiple times in May 2020.  Activists Arrested After Chaining Themselves Outside Iowa Facility Where Pigs Euthanized (June 1, 2020), available at https://www.desmoinesregister.com/story/money/agriculture/2020/06/01/activists-protesting-pig-euthanasia-arrested-charged/5308820002/.

Iowa's Trespass Surveillance statute is narrowly tailored to the significant interests it aims to protect and leaves open ample alternative channels for communication.  It is focused only on those situations where a person has committed a trespass and is attempting to use or place a camera or electronic surveillance device.  To be narrowly tailored, the law "'need not be the least restrictive or least intrusive means of' serving the government's interests." *McCullen*, 573 U.S. at 486 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)).  But, the government still "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (quoting *Ward*, 491 U.S. at 799).

Plaintiffs argue the Trespass Surveillance statute is over-inclusive because the restriction on speech is unnecessary and compared the law to a hypothetical statute that purported to stop burglaries but only applied to those who drive to the crime with a "Biden-Harris 2020" bumper sticker. (Dkt. 23-1, at 15).  Plaintiffs' argument, and hypothetical, miss the mark.  As the State has demonstrated, notwithstanding Iowa's existing trespass laws, there have been several instances of individuals trespassing on private property and conducting recordings, as well as Plaintiff ICCI's assertions that Iowa's existing trespassing laws will not deter its members from committing trespasses in the future and recording their conduct.  (*See supra*, fn. 4 and 5; Dkt. 23-1, at 6-8).[6]

With respect to Plaintiffs' hypothetical, setting aside any concerns about whether said statute would be content- or viewpoint-based, it is inapt.  There are a number of Iowa laws that include some element of alleged speech that would also be over-inclusive under Plaintiffs'

---

[6]  In addition, even if the State had imposed the same penalties as section 727.8A for violation of Iowa's general trespass law, as suggested by Plaintiffs, based upon Plaintiffs' own assertions, they may not be willing to engage in their non-violent civil disobedience or undercover investigations in that scenario because it is allegedly section 727.8A's penalties that are chilling Plaintiffs from engaging in said conduct.  (Dkt. 23-1, at 6-9).

analysis, including Iowa's fraud and "peeping tom" laws.  *See* Iowa Code § 714.8(15) (defining a

"fraudulent practice" as: soliciting money and holding oneself out as a member of a fraternal,

religious, charitable, or veterans' organization, and soliciting money by "deception" primarily by

telephone and involving claims that someone has won a prize); Iowa Code § 716.7(2)(a)(7)

(defining trespass to include intentionally filming or photographing someone through a window

in a dwelling, while standing on the real property where the dwelling is located, or intentionally

placing equipment to film or photograph someone through a window in a dwelling without their

consent and where they would have a reasonable expectation of privacy).

Iowa's Trespass Surveillance statute leaves open ample alternative channels for

communicating the speech.  The statute does not prohibit the recording or placement of a

recording device in the absence of an underlying trespass.  The statute does not prohibit the

publication of anything that is recorded.  Iowa's Trespass Surveillance statute is a reasonable

time, place and manner restriction and satisfies intermediate scrutiny, and summary judgment

should therefore be denied.

### E.  IOWA'S TRESPASS SURVEILLANCE STATUTE IS NOT OVERBROAD IN VIOLATION OF THE FIRST AMENDMENT.

Iowa's Trespass Surveillance statute is not overbroad in violation of the First Amendment

because it does not burden substantially more speech than the First Amendment permits.  The

United States Supreme Court has held that a statute is facially overbroad:

> if it prohibits a substantial amount of protected speech. The doctrine seeks to
> strike a balance between competing social costs. On the one hand, the threat of
> enforcement of an overbroad law deters people from engaging in constitutionally
> protected speech, inhibiting the free exchange of ideas. On the other hand,
> invalidating a law that in some of its applications is perfectly constitutional—
> particularly a law directed at conduct so antisocial that it has been made
> criminal—has obvious harmful effects. In order to maintain an appropriate
> balance, we have vigorously enforced the requirement that a statute's overbreadth
> be substantial, not only in an absolute sense, but also relative to the statute's

plainly legitimate sweep. Invalidation for overbreadth is strong medicine that is
not to be casually employed.

*U.S. v. Williams*, 553 U.S. 285, 292-93 (2008) (internal citations and quotation marks).  The

overbreadth doctrine should only be used as a "last resort."  *New York v. Ferber*, 458 U.S. 747,

769 (1982)) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).  Plaintiffs also bear the

burden of demonstrating substantial overbreadth exists.  *New York State Club Assn., Inc. v. City*

*of New York*, 487 U.S. 1, 14 (1988).

    1.    Iowa's Trespass Surveillance Statute does not Prohibit Protected Speech
        Necessitating First Amendment Protection.

As previously discussed in this Brief, the use or placement of a camera or electronic

surveillance device while committing the trespass is not speech protected by the First

Amendment.  Therefore, Plaintiffs cannot rely upon said conduct as an example of "protected

speech" to support their overbreadth argument.  *See Johnson v. Quattlebaum*, 664 Fed.Appx.

290, 293 (4th Cir. 2016) (unpublished decision) (court held South Carolina's public disorderly

conduct statute prohibiting the use of certain obscene or profane language reached only speech

unprotected by the First Amendment, and was therefore not unconstitutionally overbroad); *U.S.*

*v. Simpson*, 741 F.3d 539, 551 (5th Cir. 2014) (court held statute prohibiting aiding and abetting

the transmission of spam, with an intent to deceive or mislead, only reached speech unprotected

by the First Amendment because it only applies to intentionally misleading commercial speech,

and was therefore not unconstitutionally overbroad).

    2.    Even if the Trespass-Surveillance Statute Criminalizes Some Protected,
        Expressive Conduct, the Statute does not Proscribe a Substantial Amount
        of Protected Speech in Relation to its Plainly Legitimate Sweep.

Plaintiffs identify reporters, railroad hobbyists, business customers recording misconduct,

whistleblowers, and activists engaging in nonviolent civil disobedience, all of whom are

recording activity or their conduct while committing a trespass, as examples of alleged speech criminalized by the statute as support for their overbreadth claim.  (Dkt. 23-1, at 17-18).  Instead of proscribing a substantial amount of protected speech as Plaintiffs allege, Iowa's Trespass Surveillance statute proscribes a substantial amount of conduct that is <u>not</u> protected by the First Amendment, including the use or placement of a camera while committing a criminal trespass at: residential dwellings; private businesses; hospitals and other medical facilities, including abortion clinics; agricultural facilities; military installations; and governmental offices.  While this is not an exhaustive list, it is sufficiently broad enough to demonstrate the potential overbreadth, if any, of Iowa's Trespass Surveillance statute would be insufficient to invalidate the statute.  *See United States v. Brune*, 767 F.3d 1009, 1018 (10th Circ. 2014) ("Thus, even where a fair amount of constitutional speech is implicated, we will not invalidate the statute unless significant imbalance exists"); *see also Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 841 (1st Cir. 2020) (Court rejected Project Veritas' overbreadth claim because, although plaintiff identified  ten examples of applications of Section 99 that it argues are unconstitutional, it failed to show that the unconstitutional applications are "substantial" relative to the extensive range of applications it does not even challenge).

For reporters, railroad hobbyists or business customers who seek to record conduct on private property, their presence on railroad tracks or public utilities without consent or continued presence at the business after being asked to leave is already a trespass under section 716.7(2)(a), and regardless of the person's desire for information or photographs, the First Amendment does not protect such conduct on private property.  *See Lloyd Corp.*, 407 U.S. at 568.  For these aforementioned examples, the Trespass Surveillance statute is essentially only enhancing the penalty for conduct that is already prohibited by law—using a camera on a railroad or public

utility property without consent or at a business' property after being asked to leave but remaining thereon (trespass).  Enhancing penalties for conduct that is already illegal does not demonstrate overbreadth.[7]

Plaintiffs are mistaken that whistleblowers would be subject to the Trespass Surveillance statute because merely using a camera or electronic surveillance device an employee brought onto an employer's property does not qualify as a trespass for purposes of Iowa's general trespass law.[8]  Plaintiffs have not provided any examples of whistleblowers who record conduct without permission of their employer being prosecuted for criminal trespass.

Iowa's general trespass law requires the individual to "wrongfully" use an inanimate object without permission of the property owner, and it is not clear using a camera would be "wrongful" for purposes of the statute in the absence of a direct and specific notice of the prohibition from the employer directly to the employee.  *See* Iowa Code § 716.7(2)(a)(4).  Criminal laws are narrowly interpreted, and it is not clear even if the employer had a "no photography" sign posted that the employee would have received sufficient notice to establish the requisite intent to for their use to be "wrongful".  *See State v. Ahitow*, 544 N.W.2d 270, 273-74 (Iowa 1996) (a narrow interpretation of a criminal statute was "dictated by the rule of statutory interpretation that criminal statutes must be narrowly construed.").  Otherwise, whistleblowers would always be engaging in trespass in Iowa if they used a camera to capture

---

[7] Under Plaintiffs' theory, prohibiting the recording or protesting of a funeral while committing a trespass at a cemetery would violate the First Amendment, but, under the *Phelps-Roper* line of cases, creating a buffer zone at the cemetery to keep the protesters or recording devices a sufficient distance from the funeral would pass muster.  *See Phelps-Roper v. Ricketts*, 867 F.3d 883, 891-97 (8th Cir. 2017); *Phelps-Roper*, 697 F.3d at 689-95.  Such a result is incongruous.

[8] However, a whistleblower who enters into an area they lack authorization or the legal right to be or leaves a recording device to record images outside the presence of the whistleblower may run afoul of Iowa's general criminal trespass statute or one-party consent statute.  *See* Iowa Code §§ 716.7(2)(a)(4) and 808B.2(c).

purported illegal or unethical activity, regardless of Iowa's Trespass Surveillance statute.  Such an interpretation would also turn every movie theater attendee who uses their cell phone after the near-ubiquitous phone prohibition notice most theaters provide at the beginning of a movie into a criminal trespasser.  In any event, as previously mentioned, even assuming Plaintiffs' interpretation is correct, enhancing penalties for conduct that is already illegal—using a camera on a business' property without consent (trespass)—does not demonstrate overbreadth.

Moreover, an undercover investigator or protester who used or placed a camera to record while trespassing who was being prosecuted under the Trespass Surveillance statute could always bring an as-applied challenge to the existence of the requisite underlying trespass; this is a critical element that requires proof, beyond a reasonable doubt, and to be determined on a case-by-case basis.  *See Golb v. Attorney General of the State of New York*, 870 F.3d 89, 102 (2nd Cir. 2017) (rejecting overbreadth challenge to criminal impersonation statute because the statute had a substantial legitimate sweep, and any alleged overbreadth could be raised in an as-applied challenge); *see also Wasden*, 878 F.3d at 1202 (rejecting a claim that Idaho's Ag Trespass statute would apply to any undercover investigator who used false statements to obtain a job, noting the statute requires an intent to harm, and not every investigator intends to harm the employer, which is a "criminal element that requires proof.").  Accordingly, Plaintiffs have failed to demonstrate Iowa's Trespass Surveillance statute is overbroad, and summary judgment should be denied.[9]

---

[9]  Under Iowa's Trespass Surveillance statute, a person who trespasses and either knowingly "places" or "uses" a camera or electronic recording device while on the trespassed property commits an aggravated misdemeanor.  *See* Iowa Code § 727.8A.  Should this Court determine the prohibition on the "use" of a camera or electronic surveillance device while committing a trespass violates the First Amendment, the Court may sever the offending portions from the statute and leave the remainder intact.  *See State v. Louisell*, 865 N.W.2d 590, 599 (Iowa 2015) ("Severing constitutionally infirm provisions is appropriate if it does not substantially impair the legislative purpose, if the enactment remains capable of fulfilling the apparent legislative intent, and if the remaining portion of the enactment can be given effect without the invalid provision")

F.     **PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUCTION IN THE ALTERNATIVE.**

Plaintiffs request for a preliminary injunction in the alternative should be rejected by the Court.  Plaintiffs failed to move separately for such relief or even conduct the proper analysis under the four (4) factors the Court reviews when considering requests for a preliminary injunction.  If the Court determines there are genuine disputes of material fact that preclude granting summary judgment or rejects Plaintiffs' facial or overbreadth constitutional claims, Plaintiffs "likelihood of success on the merits" is arguably fatally flawed, and demonstrates why a preliminary injunction is not warranted.

III.    **CONCLUSION.**

Because Plaintiffs have failed to demonstrate the Trespass Surveillance statute invades their legally protected interests or the alleged harm Plaintiffs will suffer is both "qualitatively and temporally concrete, as well as distinct and palpable, as opposed to merely abstract," they lack standing nor is their claimed injury redressable.  Furthermore, assuming *arguendo* that Plaintiffs have standing, the Trespass Surveillance statute regulates conduct, not speech.  But even if the statute regulates speech, the statute is not facially unconstitutional under the First Amendment.  Iowa's Trespass Surveillance statute is narrowly tailored to a compelling governmental interest.  Finally, the statute is not overbroad under the First Amendment.  For these reasons, summary judgment should be denied.

---

(internal citations and quotation marks omitted); *see also* Iowa Code § 4.12 (recognizing severability as applicable to all Iowa Acts or statutes).  This would preserve section 727.8A's prohibition on "placing" a camera or leaving a camera unattended to capture or record images or data on the trespassed property.

Respectfully submitted,

THOMAS J. MILLER
Attorney General of Iowa

_/s/ Jeffrey S. Thompson_
JEFFREY S. THOMPSON
Solicitor General
jeffrey.thompson@ag.iowa.gov

_/s/ Jacob J. Larson_
JACOB J. LARSON
Assistant Attorney General
jacob.larson@ag.iowa.gov

Hoover State Office Building
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone:  (515) 281-5164
Fax:  (515) 281-4209
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system.  All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

**DATE:**  January 7, 2022

_/s/ Jacob J. Larson_
JACOB J. LARSON
Assistant Attorney General
jacob.larson@ag.iowa.gov

Hoover State Office Building
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone:  (515) 281-5164
Fax:  (515) 281-4209
ATTORNEYS FOR DEFENDANTS